UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| CITY OF BURLINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:03-cv-265 |
| | ) |
| THE AMERICAN INSURANCE COMPANY, | ) |
| FIREMAN'S FUND INSURANCE COMPANIES, | ) |
| and ZURN EPC SERVICES, INC., | ) |
| | ) |
| Defendants | ) |

## COMPLAINT

NOW COMES Plaintiff City of Burlington ("the City"), by and through its attorneys, McNeil, Leddy & Sheahan, P.C., and hereby brings this Complaint against Defendants The American Insurance Company ("AIC"), Fireman's Fund Insurance Company ("Fireman's Fund"), and Zurn EPC Services, Inc. ("Zurn EPC"), and alleges as follows:

### JURISDICTION

1.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) as the matter involves citizens of different States and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

2.   Venue properly resides in this district pursuant to 28 U.S.C. §1391.

### THE PARTIES

3.   Plaintiff City is a municipal corporation organized and existing under the laws of the State of Vermont and is located in Chittenden County. In all respects material

McNEIL,
LEDDY &
SHEAHAN
BURLINGTON, VERMONT 05401

to this action, the City acted by and through its Burlington Electric Department ("BED"). BED is the lead Joint Owner of the Joseph C. McNeil Generating Station in Burlington, Vermont ("the McNeil Station") with a 50% ownership share. Pursuant to the McNeil Station Joint Ownership Agreement, dated May 14, 1982, BED is responsible for the operation and maintenance of the McNeil Station. The other Joint Owners of the McNeil Station, and their respective ownership shares, are as follows: Central Vermont Public Service Corporation—20%; Vermont Public Power Supply Authority—19%; and Green Mountain Power Corporation—11% (collectively, with BED, the "McNeil Joint Owners").

4. Upon information and belief, Defendant AIC is a corporation organized and existing under the laws of the State of Nebraska with a principal place of business in the State of California.

5. Upon information and belief, Defendant Fireman's Fund is a corporation organized and existing under the laws of the State of California with a principal place of business in the State of California.

6. Upon information and belief, Defendant Zurn EPC is a corporation organized and existing under the laws of the State of Washington with a principal place of business in the State of Texas. Zurn EPC is the successor in interest to National Energy Production Corporation ("NEPCO").

## FACTS

7. On or about March 4, 1994, the McNeil Joint Owners entered into a contract with Future Energy Resources Corporation ("FERCO") pursuant to which the McNeil Station site was made available to FERCO to construct, develop, and operate a

biomass gasifier ("gasifier") in order to demonstrate the commercial viability of Biomass Integrated Gasifier/Gas Turbine Technology ("the Gasifier Project").

8. FERCO and NEPCO entered into a separate agreement whereby NEPCO constructed the gasifier at the McNeil Station site for FERCO.

9. The contract between FERCO and the McNeil Joint Owners made FERCO responsible for all direct and indirect costs, cost overruns and expenses associated with, among other things, the installation, construction, testing, operation, demonstration, maintenance, insuring, shutdown, demolition and disposal of the Gasifier Project.

10. The contractual agreement between the McNeil Joint Owners and FERCO expressly stated that at the conclusion, cancellation or termination of the Gasifier Project, in the McNeil Joint Owners' discretion, FERCO would remove the gasifier and all related equipment from McNeil Station and within six months return the site to its condition prior to the construction of the gasifier.

11. FERCO was contractually obligated to obtain a performance bond on or before the initial date construction began on the Gasifier Project in order to assure dismantling of the gasifier and other related equipment at the conclusion of the Gasifier Project.

12. The performance bond was required to be valued at an amount equal to one hundred thirty percent (130%) of the estimated cost of removal of the gasifier and subsequent restoration of the McNeil Station site.

13. The McNeil Joint Owners of McNeil Station were required to be named as an Obligee on the performance bond.

14. FERCO was unable to post the required performance bond.

15. The McNeil Joint Owners would not allow the Gasifier Project to continue without a performance bond in place.

16. NEPCO, n/k/a Zurn EPC, knowing FERCO was unable to do so, obtained a performance bond so that construction of the Gasifier Project would continue as scheduled, and NEPCO, n/k/a Zurn EPC, would be able to derive a profit from their construction agreement with FERCO.

17. NEPCO and FERCO subsequently entered into Change in Work No. 2 to their contract requiring FERCO to pay both NEPCO's cost of obtaining the performance bond ($7,000) and the estimated cost of dismantling the gasifier (less salvage value) ($270,000) for a total of $277,000.

18. On July 30, 1996, NEPCO executed and delivered to the City a performance bond in the sum of $351,000 (130% of $270,000) to secure performance of the dismantling of the gasifier, as more fully set forth in the bond, a true and correct copy of which is attached hereto as Exhibit "A" and hereby made a part hereof.

19. NEPCO is listed as the Contractor on the performance bond and as such is required to perform the acts set forth in the performance bond.

20. AIC, and by extension Fireman's Fund, are the Sureties on the performance bond and as such are required to pay the sum of $351,000 in the event that the Contractor fails to perform the required acts as more fully set forth in the performance bond.

21. The McNeil Joint Owners are named as Obligees on the performance bond executed and delivered by NEPCO.



22. At the conclusion of the Gasifier Project, FERCO and/or NEPCO failed to adequately dismantle the gasifier and restore the McNeil Station site to its condition prior to the Gasifier Project. On FERCO's and NEPCO'S failure to perform said acts, the performance bond remains in full force and effect.

23. On or about February 28, 2002, the McNeil Joint Owners determined to discontinue the Gasifier Project and directed FERCO to dismantle the gasifier.

24. On or about November 6, 2002, FERCO filed a voluntary petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, for reorganization under Chapter 11 of the United States Bankruptcy Code.

COUNT I: BREACH OF CONTRACT – AIC AND FIREMAN'S FUND

25. The City realleges and incorporates by reference paragraphs 1-24 above as fully set forth herein.

26. AIC, and by extension Fireman's Fund, are the Sureties on the performance bond and as such are required to pay the sum of $351,000 in the event that the Contractor fails to perform the required acts as more fully set forth in the performance bond.

27. As a result of the failure of FERCO and Zurn EPC to fulfill their contractual obligations, on May 7, 2003, the McNeil Joint Owners made a claim directly to AIC and Fireman's Fund, as Sureties, to remedy this default by delivering the sum of $351,000 now due, as required by the terms of the performance bond.

28. Defendants AIC and Fireman's Fund, though requested to do so, have neglected, failed and refused to perform said acts.

## COUNT II: BREACH OF CONTRACT – ZURN EPC

29.     The City realleges and incorporates by reference paragraphs 1-28 above as fully set forth herein.

30.     The McNeil Joint Owners, as an Obligee under the terms of the performance bond, have requested Defendant Zurn EPC, as the successor to NEPCO and the Contractor/Obligor on the performance bond, to arrange to deliver the sum of $351,000 now due under the performance bond.

31.     Defendant Zurn EPC, though requested to do so, has neglected, failed, and refused to deliver the sum of $351,000 now due under the performance bond.

## COUNT III: BREACH OF THIRD-PARTY BENEFICIARY CONTRACT

32.     The City realleges and incorporates by reference paragraphs 1-31 above as fully set forth herein.

33.     Change in Work No. 2 to the contract between NEPCO and FERCO satisfied the McNeil Joint Owners' condition that a performance bond be obtained prior to the start of the Gasifier Project to guarantee the dismantling of the gasifier at the conclusion of the Gasifier Project.

34.     NEPCO and FERCO entered into Change in Work No. 2 for the direct benefit of the McNeil Joint Owners.

35.     The McNeil Joint Owners are intended beneficiaries of Change in Work No. 2.

36.     The McNeil Joint Owners have requested Defendant Zurn EPC, as the successor to NEPCO, to dismantle the gasifier and restore the McNeil Station site to its

prior condition as required by the terms of the performance bond and Change in Work No. 2.

37. Defendant Zurn EPC, though requested to do so, has neglected, failed, and refused to dismantle the gasifier and restore the McNeil Station site to its prior condition.

### COUNT IV: UNJUST ENRICHMENT – ZURN EPC

38. The City realleges and incorporates by reference paragraphs 1-37 above as fully set forth herein.

39. Through Change in Work No. 2 to their contract, NEPCO increased the total amount to be paid by FERCO by $270,000 for the estimated cost of dismantling the gasifier.

40. NEPCO, n/k/a Zurn EPC, received from FERCO, and continues to possess the sum of $270,000.

41. Said sum of $270,000 was paid by FERCO to NEPCO, n/k/a Zurn EPC, for the purpose of dismantling the gasifier at the conclusion of the Gasifier Project.

42. Defendant Zurn EPC has neglected, failed, and refused to dismantle the gasifier at the McNeil Station.

43. Defendant Zurn EPC's retention of the $270,000 obtained in a transaction made possible by the McNeil Joint Owners requiring a performance bond securing the dismantling of the gasifier is against equity and good conscience.

WHEREFORE, the City seeks judgment against said Defendants as follows:

A. Actual, consequential, equitable and incidental damages in an amount to be determined at trial;



B.  the imposition of a constructive trust on the funds received from FERCO by Defendant Zurn EPC for the purpose of dismantling the gasifier and restoring the McNeil Station site at the conclusion of the Gasifier Project for the benefit of the Plaintiff, and name Defendant Zurn EPC as the trustee of the wrongfully held funds.

C.  attorneys' fees, interest and costs; and

D.  such further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff City hereby makes this its demand for a trial by jury on all issues so triable.

DATED at Burlington, Vermont, this 29th day of September, 2003.

CITY OF BURLINGTON

BY: _____
John T. Leddy, Esq.
McNeil, Leddy & Sheahan, P.C.
271 South Union Street
Burlington, VT 05401
(802) 863-4531

211110-7

Duplicate of A.I.A. Form A311 Feb. 1970 Edition    Bond No. 111-4156-1826


**FIREMAN'S FUND**
**INSURANCE COMPANIES**


EXHIBIT A

## PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

That National Energy Production Corporation, 18578 N.E. 67th Court, P.O. Box 747, Redmond, Washington, 98073
(Here insert full name and address or legal title of Contractor)

as Principal, hereinafter called Contractor, and The American Insurance Company, Two Chatham Center, Suite 300,
(Here insert full name and address or legal title of Surety)
P.O. Box 888, Pittsburgh, PA 15230, as Surety, hereinafter called Surety, are held and firmly bound unto
Future Energy Resources Corporation, 950 E. Paces Ferry Rd., NE, Suite 810, Atlanta, GA 30326, hereinafter called Owner And McNeil Joint Owners, 585 Pine Street, Burlington, VT 05401
(Here insert full name and address or legal title of Owner)

as Obligees, in the amount of Three Hundred Fifty One Thousand - - And - - 00/100 -------------------- Dollars ($ 351,000.00** ),
for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.
WHEREAS, Contractor has by written agreement dated July 22, 1996
entered into a Change order to a previously existing contract (Contract No. 2064, dated December 21, 1995) with Owner for Dismantling the gasification facility as specified in the Change in Work No. 2, Exhibit F. It is agreed this bond only applies to Change in Work No. 2, Exhibit F.
in accordance with drawings and specifications prepared by _____
(Here insert full name and address or legal title of Architect)
which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.
NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.
The Surety hereby waives notice of any alteration or extension of time made by the Owner.
Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly
1) Complete the Contract in accordance with its terms and conditions, or
2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.
Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.
No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligees named herein or the heirs, executors, administrators or successors of Obligees.

Signed and sealed this 30th day of July _____ A.D. 19 96

(Witness) Patricia M. Mayer

National Energy Production Corporation
(Principal)   (Seal)
James _____ Asst Treas.
(Title)

(Witness) Cindy J. Gonzales

The American Insurance Company
(Surety)   (Seal)
_____ C Broomstine

**GENERAL POWER OF ATTORNEY**

# THE AMERICAN INSURANCE COMPANY

KNOW ALL MEN BY THESE PRESENTS: That THE AMERICAN INSURANCE COMPANY, a Corporation incorporated under the laws of the State of New Jersey on February 20, 1846, and redomesticated to the State of Nebraska on June 1, 1990, and having its principal office in the County of Marin, State of California, has made, constituted and appointed, and does by these presents make, constitute and appoint WILLIAM C. BLOOMSTINE, BETH A. DUBIK, CHRIS W. BLOOMSTINE, JOHN C. BLOOMSTINE, jointly or severally

ERIE PA

its true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, seal, acknowledge and deliver any and all bonds, undertaking, recognizances or other written obligations in the nature thereof ———————————————————————————

and to bind the Corporation thereby as fully and to the same extent as if such bonds were signed by the President, sealed with the corporate seal of the Corporation and duly attested by its Secretary, hereby ratifying and confirming all that the said Attorney(s)-in-Fact may do in the premises.

This power of attorney is granted pursuant to Article VII, Sections 45 and 46 of By-laws of THE AMERICAN INSURANCE COMPANY now in full force and effect.

"**Article VII.** *Appointment and Authority of Resident Secretaries, Attorneys-in-Fact and Agents to accept Legal Process and Make Appearances.*

Section 45. *Appointment.* The Chairman of the Board of Directors, the President, any Vice-President or any other person authorized by the Board of Directors, the Chairman of the Board of Directors, the President or any Vice-President may, from time to time, appoint Resident Assistant Secretaries and Attorneys-in-Fact to represent and act for and on behalf of the Corporation and Agents to accept legal process and make appearances for and on behalf of the Corporation.

Section 46. *Authority.* The authority of such Resident Assistant Secretaries, Attorneys-in-Fact and Agents shall be as prescribed in the instrument evidencing their appointment. Any such appointment and all authority granted thereby may be revoked at any time by the Board of Directors or by any person empowered to make such appointment."

This power of attorney is signed and sealed under and by the authority of the following Resolution adopted by the Board of Directors of THE AMERICAN INSURANCE COMPANY at a meeting duly called and held on the 31st day of July, 1984, and said Resolution has not been amended or repealed:

"RESOLVED, that the signature of any Vice-President, Assistant Secretary, and Resident Assistant Secretary of this Corporation, and the seal of this Corporation may be affixed or printed on any power of attorney, on any revocation of any power of attorney, or on any certificate relating thereto, by facsimile, and any power of attorney, any revocation of any power of attorney, or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Corporation."

IN WITNESS WHEREOF, THE AMERICAN INSURANCE COMPANY has caused these presents to be signed by its Vice-President, and its corporate seal to be hereunto affixed this 21st day of March, 19 96.

THE AMERICAN INSURANCE COMPANY

By _____
                Vice-President

STATE OF CALIFORNIA } ss.
COUNTY OF MARIN }

On this 21st day of March, 19 96, before me personally came M. A. Mallonee, to me known, who, being by me duly sworn, did depose and say: that he is Vice-President of THE AMERICAN INSURANCE COMPANY, the Corporation described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Corporation and that he signed his name thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day and year herein first above written.

A. KRIEGER
COMM. # 1045112
NOTARY PUBLIC-CALIFORNIA
MARIN COUNTY
My Comm. Expires Mar. 20, 1999

_____
                Notary Public

**CERTIFICATE**

STATE OF CALIFORNIA } ss.
COUNTY OF MARIN }

I, the undersigned, Resident Assistant Secretary of THE AMERICAN INSURANCE COMPANY, a NEBRASKA Corporation, DO HEREBY CERTIFY that the foregoing and attached POWER OF ATTORNEY remains in full force and has not been revoked; and furthermore that Article VII, Sections 45 and 46 of the By-laws of the Corporation, and the Resolution of the Board of Directors; set forth in the Power of Attorney, are now in force.

Signed and sealed at the County of Marin. Dated the 30th day of July, 19 96.



_____
                Resident Assistant Secretary

360712-TA-2-94

State of Pennsylvania
County of Erie


On this 30th day of July, 1996, before me, a Notary Public in and for said County and State, residing therein, duly commissioned and sworn, personally appeared:

<u>William C. Bloomstine,</u>

Known to me to be Attorney-in-Fact of:

<u>The American Insurance Company,</u>

the corporation described in and that executed the within and foregoing instrument, and known to me to be the person who executed the said instrument in behalf of the said corporation, and he duly acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day and year stated in this certificate above.

> NOTARIAL SEAL
> JAMES M. YUSKOVIC, NOTARY PUBLIC
> ERIE, ERIE COUNTY, PENNSYLVANIA
> MY COMMISSION EXPIRES SEPT. 14, 1999

My Commission Expires_____

_____
Notary Public